## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BARRY LEE HAMLETT, a/k/a Terry Davis    \*

    \*

v.        \*      Civil Action No. CCB-12-2339

KATHLEEN GREEN, et al.    \*

    \*\*\*

## MEMORANDUM

Pending is Barry Lee Hamlett's ("Hamlett") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Respondents, by their counsel, have filed a response, (Resp., ECF No. 11), to which Hamlett has replied,[1] (Reply, ECF Nos. 13, 14). After considering the pleadings, exhibits, and applicable law, the court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2011); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts;" *see also Fisher v.. Lee,* 215 F.3d 438, 455 (4th Cir. 2000) (stating there is no entitlement to a hearing under 28 U.S.C. § 2254(e)(2)).

## BACKGROUND

Hamlett, who is self-represented, is challenging his 2005 convictions in the Circuit Court for Baltimore County, Maryland for attempted first-degree murder, assault, reckless endangerment, and related handgun offenses. (Pet., ECF No. 1, at 1.) The facts of the case are summarized as follows.

At approximately 1:45 a.m. on January 18, 2004, Portia Thompson and Charles Talbert

---

[1] Petitioner was granted additional time to address  respondents' answer, including the assertions of lack of exhaustion, untimeliness, and procedural default. (Order, February 8, 2014, ECF No. 12).

were shot in the Paradise Lounge on Lauren Street in Baltimore City. (Ex. 9[2] at 2; Ex. 14 at 5.) Shunika Flanagan, a bar patron, observed Hamlett in possession of a black gun. (*Id*.) Flanagan heard five or six shots and saw her friend, Charles Talbert, fall to the floor. (*Id*.) Kevin Smith, who was also present, heard shots and observed Hamlett. (*Id*.) Smith testified that after he heard the shots, he saw Hamlett take "what looked to be a weapon and put[ ] it into the waist of his pant and he walked slowly out the bar." (*Id*.) Smith identified Hamlett to the police as the shooter. (Ex. 14 at 5.) The parties stipulated at trial that Hamlett was prohibited by law from possessing a regulated firearm, having previously been convicted of a disqualifying offense. (*Id*. at 6.)

Hamlett was charged with attempted murder, assault, reckless endangerment, and related offenses with respect to Charles Talbert in case number 104057005. (Ex. 1.) Hamlett was charged with attempted murder, assault, reckless endangerment, and related offenses with respect to victim Portia Thompson in case number 104057006. (*Id*.) Additionally, he was charged with two handgun offenses in case number 104057008. (*Id*.)[3]

Following a jury trial in the Circuit Court for Baltimore City on May 9-11, 2005, Hamlett was found guilty in case number 104057005 of attempted second-degree murder, first-degree assault, second-degree assault, use of a handgun in the commission of a felony, and reckless endangerment of Charles Talbert. (Ex. 9 at 1.) In case number 104057006, he was found guilty of a handgun violation and reckless endangerment of Portia Thompson. (*Id*.) In case number

---

[2] All exhibits were filed by respondents and are docketed at ECF No. 11. Hamlett did not file any exhibits.

[3] Hamlett was charged in two other cases as well. In case number 104057007, Hamlett was charged with attempted murder, reckless endangerment and related offenses. These charges were later dismissed *nolle prosequi*. (Ex. 1.) Hamlett was charged in case 202228011 with intent to distribute CDS, unlawful possession of CDS, and conspiracy. The case was placed on the stet docket by the State in June 2004, and reopened at the State's request in July 2004. On May 6, 2005, a jury convicted Hamlett of possession with intent to distribute CDS and unlawful possession of CDS. On December 3, 2008, Hamlett filed a belated Notice of Appeal to the Court of Special Appeals. The appeal was dismissed on July 21, 2009. (*Id*.)

104057008, he was convicted of two counts of possession of a firearm by a prohibited person. (Ex. 1; Ex. 14 at 2.) On August 5, 2005, the court sentenced Hamlett to 30 years imprisonment for the attempted murder of Talbert, a consecutive 20 years in prison for use of a handgun in the commission of a felony or crime of violence, a concurrent three years in prison for possession of a handgun, a concurrent five years in prison for unlawful possession of a regulated firearm, and two concurrent five-year sentences for reckless endangerment. (Ex. 14 at 2.)

On direct appeal to the Court of Special Appeals of Maryland, Hamlett, by his counsel, raised three questions for review:

1. Did the trial court err in admitting testimony about a witness's fear of Mr. Hamlett?

2. Did the trial court err in denying a motion for mistrial?

3. Did the trial court impose illegal sentences for wearing and carrying a handgun, and reckless endangerment of Charles Talbert?

(Ex. 6 at 2.)

On May 21, 2007, the Court of Special Appeals vacated Hamlett's sentences for wearing and carrying a handgun and reckless endangerment of Charles Talbert, and it affirmed the remaining convictions. (Ex. 9.) Proceeding pro se, Hamlett filed a petition for writ of certiorari to review whether the trial court erred in admitting testimony about a witness's fear of him. (Ex. 10.) The Court of Appeals of Maryland denied certiorari on August 24, 2007. (Ex. 11.)

On October 24, 2007, Hamlett filed for post-conviction relief in the Circuit Court for Baltimore City in cases 104057005, 104057006, and 202228011 (CDS possession and intent to distribute). (Ex. 14 at 3.) On August 14, 2008, the Circuit Court granted Hamlett a belated appeal in case 202228011. (*Id.*); *see supra* note 3. On January 13, 2009, the circuit court dismissed Hamlett's petition for post-conviction relief, without prejudice, in light of his pending appeal in case number 202228011. (*Id.*)

3

On June 29, 2009, Hamlett filed a petition for post-conviction relief in case number 104057008 (felony gun possession) only.  (Ex. 12.)   A hearing on the petition was held on August 27, 2010. (Ex. 13.)  Hamlett confirmed for the post-conviction court at the hearing that he had discharged his post-conviction counsel and that he was seeking post-conviction relief only as to case number 104057008. (*Id.* at 3-4, 8-9, 82.)  Hamlett called no witnesses to testify at the hearing. (*Id.*)  Hamlett's trial counsel was not called to testify. (*Id.* at 21-22, 84).[4]

Hamlett raised the following claims on post-conviction review: A) trial counsel provided ineffective assistance for 1) failing to challenge the sufficiency of the evidence or contest the trial judge's evidentiary rulings, 2) failing to object or move to exclude an illegal identification, 3) failing to ask for clarification of why his objections were overruled after the prosecutor used inadmissible evidence to bolster his witness, 4) failing to request a missing witness instruction, 5) failing to challenge the indictment after the State failed to produce the victim, 6) failing to ask for a mistrial based on the prosecutor's improper comment, 7) failing to object to inadmissible hearsay, and 8) failing to challenge the prosecutor's vindictive prosecution on the basis that the prosecutor reopened the drug case in order to secure a conviction in the shooting case, and B) appellate counsel was ineffective for 1) failing to raise certain issues until the reply brief, and 2) failing to challenge the sufficiency of the evidence. (Ex. 14 at 4-5; *see also* Exs. 12, 13.)

On January 5, 2011, the Circuit Court of Baltimore City denied post-conviction relief. (Ex. 14.)  The post-conviction memorandum and opinion reads in pertinent part:

> Petitioner's Petition for Post Conviction relief alleges numerous failures of trial counsel with regard to pre-trial investigation as well as conduct of the trial. Petitioner's allegations are without merit as Petitioner has failed to show that his trial counsel was deficient or that he was prejudiced in any way. The allegations of error are merely bald assertions consisting of defective law and facts, and there is no support in the record for those

---

[4]   Defense counsel Dennis Laye was available but not called by Hamlett to testify.  (Ex. 13 at 21-22.)

assertions. This Court will address each of Petitioner's allegations of errors individually.

1. Trial Counsel Engaged in Adequate Pre-trial Investigation and, thus, Was Not Ineffective.

Petitioner alleges that he was denied effective assistance of counsel because trial counsel failed to engage in adequate pre-trial investigation. Specifically, Petitioner alleges that police obtained his arrest warrant relying on a coerced statement from Ms. Pauling. But for Ms. Pauling's false statement, Petitioner argues, police would not have been able to establish probable cause for the arrest warrant. Petitioner also complains that his trial counsel should have called Mr. Talbert to testify so as to fulfill his right of confrontation. Petitioner does not explain how defense counsel should have located the missing witness, Mr. Talbert, or how any advantage would be gained by calling the victim of the shooting attributed to the Petitioner. Petitioner argues that defense counsel failed to request a judgment of acquittal based on insufficiency of evidence, and thus rendered ineffective assistance of counsel.

It is well settled that failure to engage in adequate pre-trial investigation into a defendant's case and defenses can constitute ineffective assistance of counsel. *State v. Johnson*, 143 Md. App. 173, 192 (2002). However, trial counsel is not ineffective for failing to pursue motions or strategies that have no merit. *Harris v. State*, 303 Md. 685 (1985). Here, multiple eyewitnesses were present at the scene of shooting. Both Ed Smith and Kevin Smith provided physical descriptions of Petitioner to police, which led to issuance of the arrest warrant. Petitioner's allegation of error is not supported by accurate fact. There was nothing in the record which established a link directly between Ms. Pauling's statement and issuance of the arrest warrant. Given the overwhelming evidence against Petitioner, trial counsel made reasonable professional judgments not to pursue and confront the victim (Talbert) and not to pursue a judgment of acquittal based on insufficiency of evidence because such an action would be futile. Petitioner's allegation is without merit and thus is denied.

2. Trial Counsel Was Not Ineffective for Not Seeking to Exclude an Identification Made by Ms. Flanagan.

Petitioner alleges that he was denied effective assistance of counsel because trial counsel failed to file a motion to exclude an identification made by Ms. Flanagan while he was in the courtroom restrained by shackles. Petitioner contends that the observation and identification was illegal because it was made without the presence of his trial counsel in violation of his Sixth Amendment right. At the hearing, the State disclosed that trial counsel was notified immediately of the circumstances of Ms. Flanagan's observation and

identification of Petitioner, and that the State and trial counsel had a discussion of controlling case law on the issue of identification. Trial counsel was aware that both Kevin Smith and Ed Smith had identified Petitioner in photo arrays and he had filed motions to suppress those photo arrays. In view of the totality of identification evidence, counsel elected not to challenge Ms. Flanagan's identification as tainted by seeing Petitioner in shackles in court. Petitioner offers no reason or explanation to rebut the presumption of counsel's sound judgment. Counsel's decision not to challenge Ms. Flanagan's identification was one based on sound professional judgment. Neither prong of the *Strickland* test of ineffective assistance of counsel is met.

3.  Trial Counsel Was Not Ineffective by Not Filing a Motion For Mistrial or Requesting a Cautionary Jury Instruction In Response to Ms. Flanagan's In-court Testimony.[5]

*************************

Petitioner contends that trial counsel should have asked for a cautionary jury instruction or a mistrial [after Flanagan expressed fear of Hamlett] and his failure to do so constitutes ineffective assistance of counsel. Petitioner's argument is without merit. Petitioner presents no evidence rebutting the presumption that trial counsel exercised reasonable professional judgment not to request cautionary jury instruction or move for a mistrial. Instead, the record revealed that trial counsel promptly objected at the time Ms. Flanagan made the statement concerning her fears, and trial counsel's timely objection preserved the issue for appellate review on direct appeal. On direct appeal, Petitioner alleged that the trial court erred to admit testimony of Ms. Flanagan about her fear of Petitioner. The Court of Special Appeals found that such evidence was relevant and properly admitted by the trial court. The Court of Special Appeals' opinion confirms that Petitioner's trial counsel acted properly under the circumstances at the time of the trial when he objected. Petitioner's allegation of error fails the deficiency prong of the *Strickland* test.

At the post-conviction hearing, Petitioner referred to the State's appellate brief in support of his argument that his trial counsel was ineffective by failing to ask for a cautionary jury instruction. The State argued, in return, that such evidence was relevant, and that the prosecutor had undertaken to minimize the risk of unfair prejudice to Petitioner by making clear that Petitioner had never threatened Ms. Flanagan. The State acknowledged that Petitioner could have sought a cautionary instruction, but did not. However, the proper test for ineffective assistance of counsel is not what counsel should have or could have done; rather, the test is whether counsel's representation fell below an objective standard of reasonableness. The

---

5   *See infra* at 22-23 (exchange between prosecutor and Flanagan at trial).

relevant passage in the trial transcript (T. 5/11/05, pp. 9-10) reflects that trial counsel acted reasonably and reacted in a manner not to overstate the witness's fear or to provoke concern of any threat by Petitioner especially after the prosecutor had secured Ms. Flanagan's argument that there had been no contact and no actual threat.

4. Trial Counsel Was Not Ineffective by Not Challenging the Indictment After the State Failed to Produce a Victim.

Petitioner alleges that trial counsel rendered ineffective assistance because he failed to challenge the indictment when the State did not produce Mr. Talbert as a witness, and thus deprived him of his constitutional right to confront a witness. The State described that Mr. Talbert had an open violation of probation warrant for a CDS violation and Police had been unable to locate him. Even though Mr. Talbert did not testify at trial, there were multiple witnesses who were present at the club at the time of the shooting and later identified Petitioner as the shooter. In addition, Officer Rick Mayfield testified that he saw Mr. Talbert lying on the floor, in pain, with blood coming from his back, and bullet holes in his back. The combination of testimony from multiple witnesses described how Petitioner committed the crime charged, and the absence of Mr. Talbot [sic] throughout the trial has little or no bearing on the jury finding Petitioner's guilt or innocence. It is apparent that Petitioner's trial counsel exercised his reasonable professional judgment not to demand the production of the missing victim, or to secure the presence of the victim for examination at trial when the victim's injuries had already been fully explained by witnesses.

Petitioner's constitutional right of confrontation is not implicated when the State did not produce Mr. Talbot [sic]. The Confrontation Clause of the Sixth Amendment guarantees an accused in a criminal preceding the right "to be confronted with the witnesses against him." *Marshall v. State*, 346 Md. 186, 192 (1997) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678, (1986). Thus, a criminal defendant's constitutional right of confrontation was violated when the trial court limited the cross examination of a State witness about matters which affect the witness's bias, interests, or motive to testify falsely. *Marshall*, at 199. Under the circumstances of this case, Petitioner's constitutional right of confrontation was never implicated because the State did not rely on any testimony of Mr. Talbot [sic] at any stage of its case against Petitioner. Petitioner's allegation of violation of his constitutional right of confrontation is based on defective law, and is baseless.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

6.   Trial Counsel Was Not Ineffective by Not Filing a Motion for
     Mistrial After Prosecutor Made Improper Comment.

   Petitioner alleges that trial counsel rendered ineffective assistance because
he failed to move for mistrial after the prosecutor referred to an argument
between Petitioner and Mr. Talbert which was not in the evidence. The trial
record reveals that trial counsel did not object to such reference during
prosecutor's opening statement, but did raise an objection during
prosecutor's closing argument. During prosecutor's closing argument the
following exchange occurred:

PROSECUTOR: that night turned into a nightmare when at
approximately 1:45 am in the morning, the defendant, Barry Hamlett,
decided that he was going to end this argument that he had with Charles
Talbert.

MR. LAYE [defense counsel]: Objection.

THE COURT: Overruled.

MS. ROBBINSON [sic]: They had a disagreement with each other and this
was gonna end on this night.

MR. LAYE: I object.

THE COURT: Well, counsel, would you approach.

THE COURT: There's really no evidence of a disagreement.

MR. LAYE: Absolutely, your honor. That is why I objected.
(T. 5/11/05, pp. 96-97)

   After trial counsel's objection, the trial court explained to the jury that
closing argument was not evidence in the case, and should not be considered
in determining guilt or innocence. Petitioner argues that prosecutor's
reference to a disagreement between him and Mr. Talbot [sic] is so
prejudicial against him that the limiting instruction after counsel's objection
was inadequate to cure the prejudice, and trial counsel should have moved
for mistrial.

   In *Campbell v. State*, 65 Md. App. 498, 505 (1985), the Court, in
considering a claim of error arising from the prosecutor's reference to
persistent crying by a defendant who had not testified in the case, held that
though the State's comment was inappropriate, it was not so improper as to
mandate reversal. Similarly, in the present case, even though the reference to
disagreement between Petitioner and Mr. Talbert was not proper because it

was not supported by admissible evidence, it is not one that would have warranted a mistrial. Therefore, trial counsel was not ineffective by not requesting a mistrial, a useless act under the circumstances.

7. <u>Trial Counsel Was Not Ineffective For Not Challenging Prosecution's Decision to Re-Open Petitioner's CDS Case as Vindictive Prosecution</u>.

Petitioner alleges that trial counsel was ineffective when he failed to challenge the State's decision to re-open case 202228011 without good cause. Petitioner argues that the State wanted to use the CDS case, which was placed in stet status, to compel Petitioner to confess or take a plea for the attempted murder case, and that this constituted vindictive prosecution in violation of his Fourteenth Amendment right to due process.

Petitioner's allegation is without merit. In accordance with Maryland Rule 4-248, a stet charge may be reopened and scheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown. In the present case, Petitioner's CDS charges in case 202228011 had not been placed in stet status for longer than a year when the case was re-opened, and good cause was not required to do so. Petitioner fails to identify a right that was violated, and there was no basis to challenge the State's decision to reopen case 202228011. Counsel is not required to engage in useless arguments, and trial counsel's decision not to challenge the State's decision to proceed with its CDS charges against Petitioner reflects counsel's sound professional judgment that such a challenge would be useless. Petitioner's allegation does not establish any basis for a claim of ineffective
assistance of counsel.

(Ex. 14 at 7-15.)

Hamlett filed for leave to appeal the denial of his petition for post-conviction relief to the

Court of Special Appeals of Maryland, asserting: A) he was denied counsel at a critical stage of

trial; B) trial counsel was ineffective for 1) not moving for a judgment of acquittal based on the

state's failure to produce a material witness, 2) failing to request a mistrial after the prosecutor

alluded to facts not in evidence in opening and closing statements, 3) failing to challenge the

indictment based on a confrontation violation, 4) failing to make a hearsay within hearsay

objection, 5) failing to challenge the State's case based on vindictive prosecution, 6) failing to

challenge the State's case, and 7) the cumulative effect of these errors. (Ex. 15.)   In an unreported opinion filed on June 22, 2012, the Court of Special Appeals declined review and the mandate issued on July 23, 2012. (Ex. 16.)  Hamlett's federal habeas petition was received by the Clerk on August 7, 2012. (Pet., ECF No. 1.)

## PETITIONER'S CLAIMS

Hamlett is raising the following claims in this petition for federal habeas corpus relief:

1) An eyewitness identification of him violated his right to counsel;

2) Trial counsel was ineffective for failing to request a mistrial after the prosecution alluded to facts not in evidence in opening and closing statements;

3) The state courts violated his right to confront his accuser;

4) The trial court abused its discretion in admitting testimony about a witness's fear of Mr. Hamlett; and

5) His right to a jury trial was violated when a prospective juror tainted the jury pool.

(Pet. at 6-7.)

## ANALYSIS

The habeas corpus statute at 28 U.S.C. § 2254 sets forth certain threshold requirements which must be satisfied by prisoners who are challenging their state court judgments of conviction. Respondents are seeking dismissal of several claims that are unexhausted, untimely, or procedurally defaulted.

### A.  Threshold Considerations

#### 1.  Exhaustion of Claims

As a general rule, a federal habeas petitioner must first exhaust claims in state court because exhaustion is a matter of comity to the state courts; failure to exhaust a claim requires its dismissal by the federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Granberry v. Greer*, 481 U.S. 129,

134 (1987); *Rose v. Lundy*, 455 U.S. 509, 515–19 (1982). The exhaustion requirement is satisfied when 1) a petitioner has fairly presented all claims in state court, or 2) no state remedies are currently available to a petitioner. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996). Fair presentation requires the petitioner to have previously presented the same claims he brings in his federal habeas petition to all appropriate state courts. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by Miller-El v. Dretke*, 545 U.S. 231 (2005). Both the operative facts and the controlling legal principles must be presented to the state court. *Picard v. Connor*, 404 U.S. 270, 277 (1971). This requirement is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), and can be satisfied by presenting the claim to the state's highest court on either direct or collateral review, *see id.* at 844.

Respondents acknowledge Hamlett no longer has direct appeal or state post-conviction remedies available as to his felony gun possession conviction in case number 104057008 (handgun possession) and that claims based on this conviction are not subject to dismissal as unexhausted. (Resp. at 6, 19.)  Respondents request dismissal of Hamlett's claims based on convictions in case numbers 104057005 and 104057006 (attempted murder and related offenses) for lack of exhaustion of state court remedies.  (*Id.* at 19-20.)  In his reply, Hamlett counters that a "minor mistake was made" when he "forgot to put the number 5 in the [post-conviction case] before the number 8."  (Reply, ECF No. 13, at 3; Second Reply, ECF No. 14, at 2.)  He appears to incorrectly assume that cases 104057005, 104057006, and 104057008 are "all the same conviction, sentence and judgment." (*Id.*) This assumption is incorrect as a matter of fact and

law. Futher, Hamlett's assertion of inadvertent mistake is contradicted by his representation to the court during the post-conviction hearing.

> THE COURT: All right. Let's address – the questions, the concern about what's actually pending. Your post-conviction petition, Mr. Hamlett, dated June 30th 2009, identifies only one case number 104057008. Is it your intention to proceed on that case and only that case?
>
> MR. HAMLETT: For Count 08. Yes.

(Ex. 13 at 8-9.)

Hamlett has not exhausted his state remedies for his attempted murder convictions in case numbers 104057005 and 104057006. Accordingly, Hamlett's claims based on his judgments of conviction in case numbers 104057005 and 104057006 are unexhausted and subject to dismissal.

### 2. Procedural Default

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard*, 404 U.S. at 276; *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies and bars federal habeas review of the claim. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction proceedings); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show 1) both cause for the default and

prejudice that resulted from the alleged violation of federal law, or 2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Murray*, 477 U.S. at 495–96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted). Respondents posit that Hamlett's claims of ineffective assistance for failure to move to suppress an eyewitness identification, violation of his right to confront his accuser, and trial court error for not declaring a mistrial based on juror misconduct are procedurally barred. (Resp. at 26, 28, 30.) As discussed further below, Hamlett's claims regarding his right to confront his accuser and juror misconduct are procedurally barred.

### 3. One-Year Limitations Period

Petitions filed pursuant to 28 U.S.C. § 2254 are subject to a one-year limitation period set forth at 28 U.S.C. § 2244(d).[6] For the purpose of assessing timeliness, the court deems the

---

[6] This section provides:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244 (d)(1) and (2).

petition filed on August 2, 2012, the date it was signed by Hamlett and presumably placed in the prison mail system for posting. *See* Rule 3(d), "Rules Governing Section 2254 Proceedings in the United States District Courts" (discussing the mailbox rule).

When Hamlett initially filed for state post-conviction relief, before his direct appeal became final on November 22, 2007, the limitations period was statutorily tolled under 28 U.S.C. § 2244(d). The initial post-conviction petition was dismissed by the Circuit Court for Baltimore City on January 13, 2009. Petitioner did not appeal that decision and it became final on February 12, 2009, thereby starting the running of the limitations period. (Resp. at 21.)

Hamlett's post-conviction petition filed on June 29, 2009, addressed only his felony gun possession case. (Ex. 12; Ex. 13 at 8-9, 80.) Proceedings related to that post-conviction petition were pending through July 23, 2012.  Thus, with respect to the gun possession conviction, this petition is timely filed. However, the limitations period for the attempted murder and related offenses convictions expired on February 12, 2010, one year after the limitations period started to run. The instant federal petition, deemed filed on August 2, 2012, was therefore filed more than one year after the limitations period regarding those convictions had expired. There were no post-conviction proceedings pending in case number 104057005 or 104057006 to statutorily toll the running of the one-year limitations period (*see* Ex. 1), and Hamlett does not advance any grounds to warrant equitable tolling, (*see* Reply, ECF Nos. 13, 14).  Consequently, his claims predicated on his convictions in case number 104057005 and 104057006 are time-barred.

## B.  Petitioner's Claims

Petitioner's timely and exhausted claims will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254 which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *see also Bell*

*v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 733 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id.* Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (internal quotation marks and citation omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting 28 U.S.C. § 2254(e)(1)).

Further, to establish ineffective assistance of counsel, it must be shown that: 1) counsel's performance was deficient, and 2) the performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." Id. at 687 (internal quotation marks and citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689. A federal

court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 131 S.Ct. at 790 (internal quotation marks and citation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that

no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697. Hamlett's claims of ineffective assistance of counsel will be analyzed under these standards.

### 1.   Claim that an Eyewitness Identification Violated his Right to Counsel

Hamlett posits that his right to counsel was violated when a key witness identified him as the shooter after observing him wearing shackles and handcuffs at a court proceeding. (Pet. at 6.) Respondents assert this claim is procedurally defaulted because the same claim was not presented at the post-conviction hearing. While Hamlett may have articulated his claim inartfully, the post-conviction court as well as this court understand it as alleging the same claim: ineffective assistance of counsel for failing to move to exclude the identification.

In any event, this claim does not satisfy the standard for award of federal habeas corpus relief. During preliminary proceedings, Shunika Flanagan attended court with victim Charles Talbert's mother. (Ex. 13 at 19.) The prosecutor did not know Flanagan and was not aware of her presence was in the courtroom. *(Id.)*  Once Flanagan's presence was known, the State notified defense counsel immediately of the circumstances of Flanagan's observation and identification of Hamlett, and counsel discussed the law on the issue of identification. (*Id.* at 19-21.) Hamlett had also been identified in photo arrays  by witnesses Kevin Smith and Ed Smith.  (*Id.*) Hamlett's first trial counsel filed motions to suppress those photo arrays.[7] (Ex. 14 at 8-9; Ex. 13 at 20.)

The post-conviction court concluded counsel's decision not to challenge the identification was based on sound professional judgment, and Hamlett failed to produce any evidence to rebut the strong presumption that counsel's conduct was within a wide range of reasonable professional

---

[7]  Hamlett's first counsel, Mr. Ness, filed pre-trial motions to suppress the identifications made by Messrs. Kevin and Ed Smith.  The prosecutors told the post-conviction court that Mr. Laye, Hamlett's second counsel, did not pursue those motions. (Ex. 13 at 20.)

assistance. (Ex. 14 at 8-9.)   The court determined neither prong of the *Strickland* test was satisfied.

   The state court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).   Hamlett has not "overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted); *see also Harrington*, 131 S. Ct at790 (noting the strong presumption that counsel's attention to certain issues at the exclusion of others reflects trial tactics not neglect).   The state court decision is supported by the record and was neither contrary to nor involved an unreasonable application of federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. 2254(d). Therefore, this claim does not meet the standard for federal habeas relief and will be denied.

### 2.  Claim of Ineffective Assistance for Failing to Move for a Mistrial Based on the Prosecutor's Opening and Closing Arguments

   Hamlett faults his trial counsel for failing to move for a mistrial after the prosecutor commented in her opening statement and closing argument on a matter not in evidence; specifically that Hamlett and Talbert had argued on the night of the shooting.

   In rejecting this claim, the post-conviction court observed that trial counsel had not objected to the reference during the State's opening argument. (Ex. 14 at 14.)  Later, when the prosecutor referred to the argument between Hamlett and Talbert during the closing statement, defense counsel raised an objection.  The trial court thereafter explained to the jury that closing argument was not evidence in the case and should not be considered in determining guilt or innocence. The post-conviction court concluded that even though the reference to disagreement

between Hamlett and Talbert was inappropriate, it did not mandate a mistrial, and thus a request

for mistrial would have been "a useless act under the circumstances." (Ex. 14 at 13-14.)

The state court's determination was not contrary to, or an unreasonable application of,

clearly established federal law under *Strickland*. *See* 28 U.S.C. § 2254(d)(1). Having found the

prosecutor's comments improper but insufficient to warrant a mistrial, the state court

appropriately determined defense counsel's actions did not amount to ineffective assistance.

Further, trial counsel objected to the prosecutor's comment during closing arguments and the

court instructed the jury accordingly. Thus, the state court's determination that there was no

ineffective assistance under *Strickland* where a motion for a mistrial would be useless given the

circumstances was reasonable and survives scrutiny under the federal habeas standard of review.

For these reasons, this claim is without merit and will be denied.

### 3. Claim that Hamlett's Right to Confront his Accuser was Violated

Hamlett claims his right to confront his accuser was violated because Charles Talbert,

one of the victims, did not testify at trial.  Respondents argue this claim is procedurally defaulted

because the same claim was not litigated at the state post-conviction hearing.  In his state post-

conviction petition, Hamlett claimed that trial counsel was ineffective for failing to challenge the

indictment based on the State's failure to produce Talbert as a witness and for failing to request a

"missing witness" instruction. (Post-conviction petition, Ex. 12 at 11-13; Ex. 14 at 4.)  Because

Hamlett did not present the question raised here in post-conviction proceedings, the claim is

procedurally defaulted.   Further, Hamlett does not demonstrate prejudice or the need to consider

the merits of this claim to prevent a fundamental miscarriage of justice. Consequently, this claim

is procedurally barred from review on the merits and will be dismissed.

Notably, even if this claim were not procedurally defaulted, it would prove unavailing on its merits. As explained by the post-conviction court, the State described that Mr. Talbert had an open violation of probation warrant for a CDS violation and police had been unable to locate him. (Ex. 14 at 11.) Although Talbert did not testify at trial, multiple witnesses who were present at the club at the time of the shooting later identified Hamlett as the shooter. (*Id.*) In addition, a police officer testified at trial that he saw Talbert lying on the floor, in pain, with blood coming from his back, and bullet holes in his back. (*Id.* at 11-12.) The combined testimony from multiple witnesses described how Hamlett had committed the crime. (*Id.* at 12.) For these reasons, the post-conviction court determined that trial counsel had exercised "reasonable professional judgment" in deciding not to demand production of the victim. (*Id.*) Further, Hamlett's right to confrontation, as guaranteed under the Confrontation Clause of the Sixth Amendment, was not implicated because the State did not rely on Talbert's testimony in its case against Hamlett. Thus, assuming arguendo that this claim were to have proceeded to review on the merits, Hamlett would be unable to meet his burden to show the state court decision either 1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or 2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### 4. Claim That the Trial Court Abused its Discretion in not Admitting Testimony About a Witness's Fear of Hamlett

Hamlett claims the trial court abused its discretion when it allowed a witness to testify that she was afraid to be in court. Respondents assert that because Hamlett does not identify what federal law or constitutional right was violated by trial court's action at issue, this claim is not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254(a) (authorizing a federal court to consider a state prisoner's habeas petition "only on the ground that he is in custody in

violation of the Constitution or laws… of the United States").  Respondents continue that even if cognizable, this claim does not provide grounds for habeas relief because its rejection by the Court of Special Appeals was reasonable.

At trial, after asking Ms. Flanagan some preliminary questions, the prosecutor asked whether she had seen Hamlett in the club that evening.  Ms. Flanagan said she had, and she subsequently identified Hamlett. The following exchange then occurred:

> [PROSECUTOR]: you seem kinda hesitant to point him out. Why is that?
>
> A: Because I'm, because I really don't wanna be here 'cause I'm afraid.
>
> Q: You're afraid?
>
> [TRIAL COUNSEL]: Objection.
>
> THE COURT: Overruled.
>
> [PROSECUTOR]: Why are you afraid?
>
> [TRIAL COUNSEL]: Objection.
>
> THE COURT: Overruled. You can answer.
>
> A: Because I, I feel as though if he's capable of doing something like that then he's capable of doing anything.
>
> [PROSECUTOR]: He has not contacted you; is that correct?
>
> A.  No.
>
> [PROSECUTOR]: So, he hasn't, he hasn't bothered you in any way?
>
> A: No.
>
> [PROSECUTOR]: You're just scared for other reasons based upon what you saw that night? I don't wanna –
>
> A: Mm-hmm. Like I don't. I don't know what type of outside contact he has or anything like that. I don't, I don't know, so –

(Trial Tr. Ex. 4 at 9-10.)  After this exchange, the prosecutor proceeded to other matters and no further questions concerning the witness's fear were introduced.

On direct appeal, the Court of Special Appeals of Maryland rejected Hamlett's argument and stated:

> Identification was a crucial issue in this case.  Flanagan was a key identification witness because she testified in more detail about the shooting than any of the State's other witnesses.  She had been reluctant to give a statement to the police and then, at trial, had hesitated in identifying appellant. The prosecutor could well have been concerned that the jury might have interpreted Flanagan's reluctance and hesitation as doubt.  It was, therefore, reasonable for the prosecutor to have clarified the matter by asking Flanagan why she had hesitated before identifying appellant.  No improper evidence of threats was introduced.  The evidence was relevant.  We perceive no error by the trial judge in admitting it.

(Ex. 9 at 5.)

The prosecutor's questions were intended to clarify the witness's apparent hesitation. Indeed, the prosecutor made clear during the same examination that Hamlett had not threatened Flanagan.  The state intermediate appellate court's decision is  supported by the record and is neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  It also was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This claim provides no grounds on which to award habeas relief and will be denied.

### 5. Claim that Hamlett's Right to a Jury Trial was Violated when a Prospective Juror Tainted the Jury Pool

Hamlett claims the trial court erred by not declaring a mistrial for juror misconduct. Respondents posit that because Hamlett does not identify what federal law or constitutional right was violated by the trial court's action at issue, this claim is not cognizable on federal habeas corpus review.  Additionally, respondents contend the claim is procedurally defaulted because,

although it was presented to the Court of Special Appeals on direct appeal,[8] it was not presented

to the Court of Appeals in Hamlett's petition for writ of certiorari. (Resp. at 30; Ex. 6 at 9-17; *see*

Pet. for Writ of Certiorari, Ex. 10.)  Hamlett does not assert cause and prejudice to excuse the

procedural default or that failure to consider the claim on the merits would result in a miscarriage

of justice, i.e., the conviction of one who is actually innocent. This claim is procedurally

defaulted, and will not be considered on its merits.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an

applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that)

the petition should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484

(2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has failed to make

a substantial showing he was denied a constitutional right, and this court finds that reasonable

jurists would not find the denial of habeas relief in this case debatable. Therefore, a certificate of

appealability shall not issue.

## CONCLUSION

For the foregoing reasons, the court concludes the petition provides no grounds for

habeas corpus relief. A separate order follows denying the petition and declining to issue a

certificate of appealability.

  April 29, 2014                                    _____/s/_____
Date                                                       Catherine C. Blake
                                                                 United States District Judge

---

[8] A venireman expressed some knowledge of the shooting with other veniremen.  He was identified and excused. (Appellant's Brief, Ex. 6 at 9-16; Decision of the Court of Special Appeals on Direct Appeal, Ex. 9 at 5-9.)